## SUPREME COURT.

THE PEOPLE *ex rel.* JULIA A. SHAW agt. JOHN McCARTY *et al.*

*Summary proceedings — Illegal trade — Landlord and tenant.*

Where a tenant knowingly sublets a portion of the demised premises for a policy shop, the lease of the tenant may be annulled by the landlord, and the tenant may, under the statute in reference to illegal trades, be removed by summary proceedings, the same as if he were an over holding tenant.

The principles laid down in same case reported in 59 Howard's Practice, 487, sustained.

*First Department, General Term, October,* 1881.

JULIA A. SHAW, as landlord, commenced summary proceedings against John McCarty, her tenant, to remove him and an under-tenant (who was also made a party to the proceeding) from the possession of a hotel in Forty-second street, near Fourth avenue, in the city of New York, upon the ground that they had violated the statute in reference to "illegal

trades," in this, that the tenant McCarty had knowingly sublet a portion of the premises, to an under-tenant to be used as a "policy shop."

Upon the trial before justice LANGBEIN of the seventh district court, the proceedings were dismissed. The landlord thereupon obtained a writ of *certiorari* to review this adjudication, and at the same time commenced new proceedings before Mr. justice McADAM, of the marine court, who found for the landlord (*case reported*, 59 *How. Pr.*, 487). The proceeding had before justice LANGBEIN was then brought to a hearing in the supreme court upon the writ of *certiorari* granted to review them, and that court has reversed his adjudication in the following opinion:

*E. P. Wilder*, attorney for relator

*Joseph Ullman*, attorney for respondent.

DANIELS, *J.* — The proceedings were taken under the authority of chapter 583 of the Laws of 1873. The evidence given to support the allegations made by the relator very clearly show that the basement sublet by the lessee, McCarty, to Lampson as an under-tenant, was devoted to the business of a policy shop. That was not only established by the direct and positive statement of some of the witnesses, but in addition to that it appeared from what was stated to have been transacted there, and moreover it was not denied by the subtenant himself when he was examined as a witness upon the hearing. This may not have been an indictable offense under the law as it was constituted by the case of *People* agt. *Jackson* (3 *Denio*, 101), but still, if it was an unlawful business, it was within the terms of the act of 1873. That the business was unlawful and within the restraint of the statute prohibiting lotteries is plainly to be inferred from the manner in which it was transacted. According to the evidence of the witnesses who participated in it, they purchased certain num-

bers, and as they were selected they drew certain amounts of money depending upon such numbers, or lost the money paid for them. What was bought and sold was the chance to obtain sums of money depending upon the numbers selected from those offered for sale. The sales made were those of chances to draw money. It was a device of chances, determinable by the successful or unsuccessful selection and purchase of numbers, and it was, therefore, within the terms of the statute prohibiting lotteries and rendering them unlawful (1 *R. S.* [*Edmond's ed.*], 617, 618, *secs.* 22, 27). To carry on such a business was plainly unlawful, as these terms have been made use of in the act of 1873. And that was sufficient to avoid the lease of the person carrying on this business. The fact that the tenant of the building sublet this portion of it with the assent of the owner of the property is not of the slightest importance. For the inquiry to be made is not whether the lease itself was authorized, but whether the demised premises were wholly or partially devoted to an unlawful business. If they were, then the lease may be annulled and the tenant removed, although the demise may, when it was made, have been formal and effectual. The evidence did not show that McCarty, the tenant of the entire building, knew that his subtenant was using the portion leased to him for an unlawful purpose, until the interview which took place between himself and James E. Shaw, on the 10th day of July, 1880. Then he was fully informed of the fact. But instead of taking immediate measures to put an end to the business, or remove the subtenant, he served notice upon him to vacate the premises occupied by him on the first day of the following August. That left Lampson at liberty to continue his occupation until that time. It was an implied license to him, which the evidence showed he availed himself of by carrying on his business until proceedings were taken by the relator, on the nineteenth day of July, to remove both McCarty and his subtenant Lampson from the premises. Whether the statute should be so construed as to include the lease of

the entire building, when the unlawful use consists only of one apartment leased to a subtenant, is a point not now to be considered, for it was presented in the case of *People* agt. *Bennett* (14 *Hun*, 63), and there held to produce a forfeiture of the lease made to the tenant whose lessee appropriated the part of the building leased to him to carrying on an unlawful business. This case was brought within that authority.

The business carried on in the apartment of the subtenant was an unlawful one under the statute (*Hull* agt. *Ruggles*, 56 *N. Y.*, 424), and the proceeding was commenced after the tenant of the building had acquired knowledge of the unlawful nature of the business carried on by his under-tenant, and had made himself a party to it by substantially allowing its continuance for the ensuing period of three weeks. That was sufficient to make out the case, and, under the terms of the act of 1873, to entitle the relator to a warrant for the removal of these occupants from the premises. She had done nothing to deprive herself of the right created by the statute subject to which the lease of the property had been made by its owner. And the notice served by the tenant on his subtenant contemplating a subsequent period to which his tenancy might be continued, in no manner suspended or affected the right of the relator to terminate the lease and repossess herself of the premises. All that was required for that purpose was that the occupant and lessee of a part of the premises carried on an unlawful business in that part, and that his lessor, who was the tenant and lessee of the entire building, knew of that use, and made himself a party to it by permitting its continuance after he had acquired that knowledge.

These facts were established by the evidence, and the proceedings should not have been dismissed, but a warrant should have been issued to place the relator in possession. They must, therefore, be reversed, with costs to the relator.

DAVIS, Ch. J., and BRADY, J., concur.