MICHAEL P. BROWN v. THE STATE.

1. Whether an act is illegal, and what constitutes a disorderly house, is a question of law to be settled by the court, but it must be left to the jury to find, as a question of fact, whether satisfactory evidence is produced to show that the defendant is guilty of habitually permitting such acts upon his premises as are declared to be illegal.

2. Playing cards for beer to be purchased and paid for by the loser, is gaming.

In error to Union Quarter Sessions.

Argued at June Term, 1886, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, VAN SYCKEL and KNAPP.

For the plaintiff, *F. C. Marsh* and *J. R. English.*

For the defendant, *W. R. Wilson.*

The opinion of the court was delivered by

VAN SYCKEL, J.   The plaintiff in error, who is a licensed saloon keeper in the city of Elizabeth, was convicted for keeping a disorderly house.   The evidence upon which the conviction was based was that on Sunday, the 4th day of October, 1885, one person purchased a pint of ale at Brown's saloon, and another person went five or six times on the same day to the saloon, and purchased each time a pint of beer.   There was also evidence that on the same day, persons were sitting around the tables in the saloon, engaged in playing cards for beer and cigars.

The defendant below, by his counsel, requested the court to charge the jury that whether or not the repetition of illegal sales of spirituous or malt liquors at a drinking saloon on a single Sunday, are of such character and frequency as to constitute habitual selling, and thereby render the house disorderly, is a question for the jury to determine under the circumstances of each particular case.

The court was also requested to charge, that evidence that

cards were played by the frequenters of a drinking saloon, at which the stake was the price of the liquors drunk or cigars smoked by the players, which price was to be paid by the loser to the seller of the liquor or cigars, did not, as a matter of law, constitute gaming, but it was a question for the jury whether it was gaming within the meaning of the indictment.

The court refused to charge according to either of said requests, and, on the contrary, charged:

First. That the mere repetition of illegal sales of spirituous or malt liquors at a drinking saloon on a single Sunday does constitute such saloon a disorderly house, and

Second. That card playing in the saloon for drinks or cigars constituted gaming within the meaning of the indictment.

Errors are assigned upon the refusal to charge as requested, and also upon the charge as given.

To constitute a disorderly house, an habitual violation of the law must be permitted by its occupant.

Whether an act is illegal, and what constitutes a disorderly house, is a question of law to be settled by the court, but it must be left to the jury to settle, as a question of fact, whether satisfactory evidence is produced to show that the defendant is guilty of habitually permitting infractions of the law upon his premises.

It is admitted that the sale of beer on Sunday is an infraction of the law, but *State* v. *Hall*, 3 *Vroom* 158, is relied upon to maintain the proposition that there is no illegal element in allowing gaming at cards, upon an agreement that the loser shall purchase of the proprietor the beer which the winner and loser shall drink.

The case cited holds that the practice of the loser of a game of ten-pins paying for the use of the alley is not gaming. The case is not parallel; the loser of the game of ten-pins did not agree to purchase and pay for drinks. It is just as clearly gaming to play cards for a glass of beer as it is to play for a barrel or ten barrels of beer. The difference is only in the value of the stake played for.

Playing cards for beer constitutes gaming within the meaning of the indictment.

It is impossible to establish any inflexible standard by which the evidence which should satisfy a jury in such cases shall be measured, or to specify how many repetitions of the illegal sale shall be necessary to create the prohibited nuisance. Each case must be adjudged according to its own circumstances.

If a man who had no bar fitted up, and no provision made for supplying all who apply, and no accommodations inviting the public, should sell liquor on a single Sunday, there would be an absence of circumstances to lead a jury to infer that he was engaged in the business of carrying on an illegal traffic.

On the contrary, if his premises are specially adapted to, and furnished for the pursuit of the unlawful business, and persons who apply are generally admitted to enter his premises on a Sunday, then the further proof that there are repetitions of the sale of spirituous or malt liquors on that single Sunday would constitute a state of facts from which a jury would be justified in finding that the keeper of such a house was guilty of the common practice of violating the law. All the circumstances surrounding the case may be considered, and, in order to establish the vicious character of the house, it is competent to show that the defendant, within a reasonable time next before the time laid in the indictment, as well as within the time laid in the indictment, permitted the unlawful acts to be committed in his house.

The court below erred in refusing to leave it to the jury, as a question of fact, to find whether the defendant was guilty of habitually committing or allowing to be committed on his premises the illegal acts imputed to him.

Therefore, the judgment of the Quarter Sessions must be reversed.