GRANITE BUILDING CORPORATION *vs.* WILLIAM R. GREENE *et al.*

PROVIDENCE—JANUARY 22, 1904.

PRESENT: Stiness, C. J., and Douglas, J.

(1) *Pleading. Abatement.*

A plea denying that the action was authorized by the plaintiff is in abatement, and is waived by the filing of pleas in bar which do not refer to it or save the benefit of it.

(2) *Pleading. Nonsuit. Procedure.*

Where a nonsuit was granted against one of parties defendant at a former jury trial, which was subsequently sustained on appeal, defendant should ask for judgment in his favor upon such decision, and individual pleas filed by him at a second jury trial are properly stricken out.

(3) *Pleading. Special Pleas. General Issue.*

In an action of trespass and ejectment a plea averring that the assignment of the lease was not made to defendant at the time of the alleged breach is properly stricken out, as the fact is admissible under the general issue.

(4) *Pleading. Pleas. Demurrer.*

In an action of trespass and ejectment a plea setting up that the covenant relied upon was a personal covenant with the original lessees and did not run with the land is properly stricken out, as this depends upon the construction of the lease and should have been offered as ground of demurrer.

(5) *Pleading.  Breach.  Demurrer.*

A plea averring that the breach of covenant assigned in an action of tres-
pass and ejectment is not a continuing breach is properly stricken out,
as this is matter of construction and should be claimed by demurrer.

(6) *Pleading.  Special Pleas.  General Issue.*

A special plea in an action of trespass and ejectment averring that plain-
tiff has never recognized the assignment of the lease to defendant is
properly stricken out, as this can be shown under the general issue.

(7) *Pleading.  Special Pleas.*

In an action of trespass and ejectment a plea alleging that plaintiff ac-
cepted rent of defendant accruing since the alleged forfeiture, and so
continued after the bringing of the suit, whereby he waived the breach,
is, when pleaded in proper form, suitable as a special defence.

(8) *Pleading.  General Issue.*

In an action of trespass and ejectment, to a count alleging a monthly let-
ting, a plea averring that defendant is a tenant from year to year
amounts to the general issue.

(9) *Evidence.  Written Agreement.*

In an action of trespass and ejectment based upon a lease and acceptance
by defendant of an assignment of it, the agreement being wholly in
writing, was for the court to declare; and evidence calling for an ex-
pression of opinion from a witness as to the contract between the par-
ties was properly excluded.

(10) *Trespass and Ejectment.  Forfeiture.  Landlord and Tenant.  Ac-
ceptance of Rent.  Bond on Claim of Jury Trial.*

Where a bond has been given under the statute upon claim of jury trial
by defendant in an action of trespass and ejectment, the acceptance of
rent thereafter by plaintiff is not a recognition of the continuance of
the tenancy so as to work a discontinuance of the suit.

(11) *Leases.  Landlord and Tenant.  Assignment.  Forfeiture.  Cove-
nants Running with Land.*

A lease from X. to Y. contained the covenant, that "the said lessee will
not sell liquor upon the premises except in the due course of his busi-
ness as druggist." Y. assigned the lease to Z.  Z. sublet a portion of
the premises to S. for a liquor saloon:—

*Held,* that the covenant ran with the land and bound Z.

*Held,* further, that while the lease imposed the condition that the lessee
should not sell liquor, it did not require him to see that no liquor was
sold on the premises by a sub-tenant.

*Held,* further, that the fact that liquor was sold by a sub-tenant of the
lessee did not work a forfeiture of the lease as against the lessee.

TRESPASS AND EJECTMENT.   Heard on petition of defendant
for new trial, and judgment for defendant without costs.

DOUGLAS, J.   The plaintiff, a corporation established under the laws of Rhode Island, and located at Providence, brings this action of trespass and ejectment to recover possession of two stores, Nos. 15 and 16 Market square, in Providence, which the defendant holds as assignee of a lease made by the plaintiff to Harris & Greene for ten years from April 1, 1898. The plaintiff originally claimed that William R. Greene and George C. Greene were assignees of the lease and its tenants, but after the first jury trial abandoned that claim and now seeks to hold William R. Greene alone.

The lease contained, among other things, the following provisions:

" And the said lessees, for themselves and for their respective executors, administrators, and assigns, do covenant with the said lessor, its successors and assigns, that they will pay said rent at the times and in the manner aforesaid, and that in case of failure upon their part to pay the same within fifteen days subsequent to the time above specified (and it shall not be required that any demand be made for the same), or in case of failure to perform all the covenants and agreements contained in this lease on the part of the said lessees to be kept and performed, or in event the firm of Harris & Greene shall at any time make an assignment for benefit of creditors, or go into bankruptcy, the said lessor shall be at liberty to declare this lease at an end and take immediate possession of the premises; and that the said lessees will not sell liquor upon said premises except in the due course of their business as druggists, and keep the premises hereby leased to them in good repair," etc., etc.

The defendant, in November, 1901, sublet store No. 15 Market square to one Denault, for a liquor saloon, and he took possession December 11, 1901, and has carried on the business of selling liquor there ever since.

The plaintiff claims that this selling of liquor by Denault was a breach of the covenant in the lease, and that thereby the defendant forfeited his term. The case was before the court after a first jury trial, which resulted in a verdict for the defendant, and the opinion of the court upon the questions then raised is reported in 25 R. I. 48.

A new trial was had May 13, 1903, which resulted in a verdict for the plaintiff, and the case is now before this division upon the defendant's petition for a new trial upon the grounds that the verdict is contrary to law and the evidence, and that the presiding justice erred in certain rulings and in his charge to the jury.

The first exception is to the order of the court striking out certain of the defendant's special pleas.

These pleas are sixteen in number.

(1)   The first denies that the action was authorized by the plaintiff. This is matter in abatement, and is waived by the filing of pleas in bar which do not refer to it or save the benefit of it.

(2)   The next five are individual pleas by George C. Greene. The record, however, shows that a nonsuit as against George C. Greene was granted at the first jury trial, and the Appellate Division expressly held the nonsuit to have been properly granted. George C. Greene, therefore, should have asked to have judgment entered in his favor upon this decision.

(3)   The seventh plea is that the assignment of the lease was not made to the defendant at the time of the alleged breach. This alleged fact, if not immaterial, was admissible under the general issue.

(4)   The eighth plea sets up that the covenant relied upon was a personal covenant with Harris & Greene, the original lessees, and does not run with the land. This depends upon the construction of the lease, and should have been offered as ground of demurrer to the declaration.

(5)   The ninth plea is that the breach assigned is not a continuing breach. This is also matter of construction, and should have been claimed by demurrer.

(6)   The tenth and twelfth pleas are that the plaintiff has never recognized the assignment to the defendants, and has refused to consent thereto. This is a matter debatable under the general issue.

The eleventh plea alleges that the plaintiff permitted liquor to be sold upon said premises in manner as alleged in the second count. This plea is bad in form, as it does not give color.

(7)   The thirteenth plea alleges that the plaintiff accepted rent

of William R. Greene, accruing since the alleged forfeiture, and so continued after the bringing of this suit, whereby it has waived the alleged breach. This, if pleaded in proper form, would be suitable as a special defence.

The fourteenth plea is to the third count of the declaration, which alleges a monthly letting, and sets out that the plaintiff received rent of William R. Greene after the termination of the month and after the commencement of this suit. This also is correct in substance.

(3)    The fifteenth is that William R. Greene holds the premises from the plaintiff as a tenant from year to year. This is matter amounting to the general issue.

The sixteenth is the general issue, and was not stricken out; but this plea, as well as all the others, except the second, third, fourth, fifth, and sixth, is pleaded by both the original defendants, whereas, George C. Greene having been dismissed from the suit, William R. Greene should have pleaded alone.

It therefore appears that the matter contained in some of these pleas involved the construction of the lease or declaration only, and should have been set out by demurrer to the declaration; that the matter of others amounted to the general issue, and that the defence of waiver by acceptance of rent and by direct approval of the subletting might properly have been specially pleaded. The ruling, however, was not prejudicial to the defendant, inasmuch as the plaintiff's counsel agreed that evidence upon all the matters pleaded might be introduced under the general issue.

(9)    The second exception was taken to the refusal of the court to allow the question: "Did William R. Greene or George C. Greene ever make any contract with the Granite Building Corporation that they would not sell liquor upon the premises except in the ordinary course of their business as druggists?"

The plaintiff's case was based entirely upon the lease and the acceptance by the defendants of an assignment of it. The agreement, therefore, being wholly in writing, was for the court to declare, and the witness could not be asked to express an opinion upon it. If the question was intended to mean whether or not, aside from the acceptance of the lease, the de-

fendants had made any other agreement in the premises, it was not clearly framed and was properly ruled out.

The third exception is to the refusals of the court to charge as requested. The first request was to charge the jury that the suit was not properly authorized. This, as we have seen above, was matter in abatement, and the defendant waived it by pleading over to the merits. The only error was in the admission of evidence upon the issue, and we may add that the evidence was sufficient to sustain the authority to sue.

The second request was to charge that the acceptance of rent by the plaintiff, after knowledge of the alleged breach, was a waiver of it. Upon the previous hearing in this division the court held that the breach alleged in this declaration was of a continuous covenant, and that the acceptance of rent after a first breach was no bar to the enforcement of the forfeiture for subsequent breaches. The refusal was in accordance with this opinion.

(10)   It appeared in evidence that on making the claim of jury trial the defendant William R. Greene filed in the District Court his bond with William H. Shaw as surety, conditioned that William R. Greene should pay all rent or other moneys due or to become due pending this action, under the tenancy, and such damages and costs as might be awarded against him, and that after the giving of the bond the defendant gave to Shaw from time to time sums of money equal to the rent reserved in the lease, which sums Shaw paid to the plaintiff's attorney as rent, and received receipts therefor. It further appeared that the receipts contained a reservation of all claims of forfeiture, notwithstanding the acceptance of rent, and, moreover, that the reservation clause of these receipts was not brought to the knowledge of the plaintiff or its officers nor made known to the defendant. Upon these facts the defendant claimed that the plaintiff could not take advantage of the reservation, and that the receipt of rent was a waiver of all forfeitures down to the time of the trial.

We think that the court was correct in holding that the receipt of rent in the circumstances set forth was no waiver of the plaintiff's right to insist upon a forfeiture if the defend-

ant had broken the conditions of the lease. It must be conceded that the acceptance of rent is ordinarily such a recognition of the continuance of the tenancy as is inconsistent with a claim that the tenancy has been forfeited, but we do not think the act has this significance when a bond has been given to pay rent during the pendency of a suit of ejectment. The statute provides that such a bond shall be given in order that the suit may go on; and the contention that if it is given, and rent is accepted under it, it works a discontinuance of the suit, is unreasonable. The action of trespass and ejectment proceeds upon the assumption that the defendant is no longer a tenant, but a trespasser. If, therefore, before the statute was passed, the plaintiff accepted rent, he reinstated the defendant as his tenant, and so he was compelled to wait till the termination of the suit and then prosecute his claim against the trespasser for *mesne* profits or for double rent under statute, cap. 28, IV George II. *Mathewson* v. *Ham*, 21 R. I. 315. It was to remedy this condition of affairs that our statute was made, and to give it any remedial effect we must construe it as was done by the court below.

From this conclusion it follows that the wording of the receipts was immaterial, and the exception relating to the knowledge or ignorance of the parties as to their contents must be overruled.

The seventh request was to charge that: "If the plaintiff corporation, through Mr. Sabre, its president and general manager, permitted the defendant to use or suffer to be used said premises for the liquor business, as shown in evidence, it could not lawfully declare said lease forfeited by the defendant and this action cannot be maintained." To which the presiding justice replied: "That request I will give you. I do not charge you, gentlemen, that if Mr. Sabre said that he did not care, that would constitute a consent, but I charge you, gentlemen, that if Mr. Sabre, with due authority from the corporation to so act, permitted them, that it was the act of the corporation through his permitting Mr. Greene to sell liquor or permitting the selling of liquor there."

The defendant's contention is that the court should have

charged that the president and general manager of the plaintiff corporation was empowered by his official position to assent to a breach of the conditions of this lease. We do not think the evidence shows that he was possessed of any such power. There is nothing in the case to show that he had been accustomed to exert such authority, and no by-law or other actual authorization was introduced. It is not to be presumed that he of his own motion could alter the requirement of a sealed instrument made by the corporation with due formality; and, furthermore, the evidence as to his conversation with the defendant leaves it doubtful whether he expressed his own individual desire or spoke in a representative capacity.

The presiding judge could not properly have granted the request.

(11)   We have discussed the foregoing issues thus at length because counsel have presented them prominently in their briefs and arguments, but we come now to a question which goes to the foundation of the case: It is assumed by the declaration that the covenant in the lease—"that the said lessees will not sell liquor upon said premises except in the due course of their business as druggists"—bound them not to permit the sale of liquor there by any one else. In examining the evidence to see whether it supports the verdict we must first construe this provision of the lease, for there is no evidence of any sales of liquor by the lessees or by their assignee, the present defendant, and unless a sale by the sub-tenant is in violation of this provision, the term has not been forfeited.

We have no doubt that the covenant, such as it is, runs with the land and binds the assignees of the lease as well as the original lessees. The covenant expressly binds the "assigns" of the lessee as well as "themselves;" and when the assign was accepted as tenant under the lease he came into privity with the lessors and assumed all the covenants which the lessees had made on his behalf. Independently of the language used the subject of the covenant is a restriction on the enjoyment of the term, and so runs with the land. Tay. L. & T. § 416; *Hurd* v. *Curtis*, 19 Pick. 462; *Miller* v. *Prescott*, 163 Mass. 12; *Wheeler* v. *Earle*, 5 Cush. 31; *Ver-*

*plank* v. *Wright*, 23 Wend. 506; *Norman* v. *Wells*, 17 Wend. 136.

But this does not determine the scope of the covenant itself.

The plaintiff argues that the assignee, by permitting his subtenant to carry on a retail liquor saloon on the leased premises, is a participator in the selling and therefore a seller himself, and thereby violates the covenant in the lease. The cases which he cites do not support the proposition.

*Prescott* v. *Kyle*, 103 Mass. 381, rests upon the provisions of Massachusetts General Statutes, c. 87 §§ 6–9, which, among other things, provide that one who knowingly permits a tenement while under his control to be used for certain purposes shall be deemed guilty of aiding in maintaining a nuisance, and that a person in lawful possession of a tenement who so uses the same shall forfeit his tenancy. By this statute, willfully permitting is made equivalent to maintaining; but without the statute the plaintiff would have had no case.

In *Wheeler* v. *Earle*, 5 Cush. 31, the words are: "that the lessee will not occupy or in any manner suffer the buildings now on the premises or which may hereafter be erected thereon, to be occupied . . . for any unlawful purpose." The court say that under this lease the occupation for an unlawful purpose by a subtenant will work a forfeiture of the term. No doubt this is correct, for the covenant bound the lessee to prevent the unlawful use by others as well as to refrain from unlawful use himself.

In *Miller* v. *Prescott*, 163 Mass. 12, the covenant was "not to make or suffer any waste, or any unlawful, improper, or offensive use of the said premises." The court say: "We are of opinion that the agreement not to 'make or suffer' a unlawful use of the premises must be interpreted as a stipulation that there shall be no unlawful use by the original lessee, or by any person who is occupying under him. . . . With this interpretation effect is given to the word 'suffer.' It may not be reasonable to hold that the covenant makes the lessee liable for an unlawful use of the property by trespassers, but he may well be held to 'suffer' an unlawful use of the property

if he does not take effectual measures to prevent such a use by those who occupy by his authority."

The case of *People* v. *McCarty*, 62 How. Pr. 152, was based upon a New York statute which makes a lease void if the lessee knowingly permits an unlawful use of the premises; and *Sell* v. *Branen*, 70 Ill. App. 471, is in no way analogous to this case.

We have searched the precedents with considerable care, but have not found any case in which a forfeiture has been sustained on account of the act of a subtenant, in violation of the restriction of the mode of enjoyment, unless the tenant had made himself liable for such act by the use of the word "suffer" or "permit," or some general expression assuming the duty of preventing the obnoxious act.

In *Doe* v. *Keeling*, 1 Mau. & Sel. 95, the covenant was "not to use or exercise, or permit or suffer to be used or exercised upon the demised premises, or any part thereof, any trade or business whatsoever," etc.

In *Doe* v. *Spry*, 1 Barn. & Ald. 617, the words are, "will not permit or suffer any person to carry on trade of butcher." In *Doe* v. *Elsam*, 1 M. & M. 189, "or if any auction shall be had on the premises, or use them for the sale of pork." In *Doe* v. *Bond*, 5 B. & C. 855, "if lessee, his executors, administrators, or assigns shall commit or permit waste," etc.

The courts have generally construed conditions in leases with great strictness, the parties being held to the meaning of the words they have selected to express their obligations. In *Doe* v. *Godwin*, 4 Mau. & Sel. 265, Lord Ellenborough says: "I believe the safest rule for the construction of these instruments is to construe them according to the letter unless we can see a decisive reason for departing from it." And Sir Henry Dampier adds: "In construing the solemn acts of parties it is the safer rule to adhere to the expressions they have used, rather than to proceed on an intention not expressed and to be formed only from conjecture."

Thus, if a right of re-entry is not expressly given, breach of a condition will not work a forfeiture. *Spear* v. *Fuller*, 8

N. H. 174; *Brown* v. *Bragg*, 22 Ind. 122; *Burnes* v. *McCubbin*, 3 Kan. 221.

In this latter case the lease provided for a right of re-entry on breach of certain specified conditions, and provided that the lessee should not assign, but did not provide for re-entry upon breach of this condition. It was held that by assigning the lease the lessee did not incur a forfeiture. The court say: "The rule is that when parties have entered into written engagements with expressed stipulations, it is manifestly not desirable to extend them by implication. The presumption is that having expressed some they have expressed all the conditions by which they intend to be bound under the instrument."

The lease under consideration provides against assignment, but does not forbid subletting. *Crusoe* v. *Bugby*, 2 W. Bl. 766, and note. It imposes a condition that the lessee shall not sell liquor, but does not require him to see that no liquor is sold on the premises. The provision with respect to the sale of liquor is interlined, and seems to have been added as an afterthought, without much care or attention to the context. If the parties contemplated the greater responsibility which the plaintiff now contends for, there were apt words for the purpose which could have been found in any book of forms. The original lessees assigned their term to the present defendant, and upon this breach of condition the lessor could have entered and terminated the letting. It did not choose to do so, but accepted the defendant as its tenant. Coming in as he does, as assignee under the written instrument, he has the right to claim that it expresses all the terms of the letting. The lessor has permitted him to take it exactly as it is. Understandings and conditions, if any there were between the original parties outside of the written contract to which this defendant has become a party, do not affect him and cannot be considered in the determination of his rights.

We conclude, therefore, that the construction upon which the plaintiff's whole case is based must fail; and, hence, that the defendant has not forfeited his lease.

It follows that the defendant is entitled to judgment; but as the point upon which the case turns ought to have been taken

by demurrer to the declaration, and the neglect of the defendant to interpose this defence seasonably has necessitated two jury trials and one trial in this division, he ought not to recover costs.

The case will be remitted to the Common Pleas Division for judgment for the defendant without costs.

*William A. Morgan*, for plaintiff.

*Irving Champlin and Adoniram J. Cushing*, for defendant.