[No. 19635. Department One. January 5, 1926.]

CHARLES E. SHEPARD *et al., Appellants,* v. HARRY W. DYE *et al., Respondents.*[1]

[1] GAMING (10)—CRIMINAL RESPONSIBILITY—GAMES AND DEVICES PROHIBITED. The shaking of dice for cigars at a cigar store is gambling, within Rem. Comp. Stat., §§ 2469 and 2474, referring to games of chance "played with . . . dice" or any "scheme or device" whereby any money or property is bet, wagered or hazarded upon any chance, or "uncertain or contingent event whatever."

[2] LANDLORD AND TENANT (39-2)—FORFEITURE BY WRONGFUL ACT—ACTS OF SUBTENANT. The violation by a sub-lessee of a restriction in the lease against gambling warrants a termination of the head lease.

[3] SAME (39-2). Rem. Comp. Stat., § 812, subd. 5, requiring a three day's notice for dispossession in unlawful detainer, where the tenant carries on any unlawful business in the premises, authorizes termination of the head lease for a violation by a sub-lessee; notwithstanding sub-tenants are mentioned only in subd. 4, requiring a ten day's notice in case of other defaults therein specified.

[1]Reported in 242 Pac. 381.

[4] SAME (40)—TERMINATION—WAIVER OF FORFEITURE. A landlord is not estopped to terminate a lease by the fact that he had notice that the tenant allowed gambling on the premises, where the gambling continued until the day of the trial, after notice to quit and surrender the premises within three days.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered April 13, 1925, upon findings in favor of defendants in an action of unlawful detainer, tried to the court. Reversed.

*J. K. McDowall* and *Poe, Falknor, Falknor & Emory,* for appellants.

*Shorett, McLaren & Shorett,* for respondents.

ASKREN, J.—This is an action to dispossess, under a three-days' notice for violation of the terms of a lease. From a judgment in favor of defendants, plaintiffs have appealed.

The facts follow: Appellants, as owners of certain premises in the city of Seattle, leased the same to respondents Dye. Contemporaneously therewith, they leased a portion of the same premises to respondents Green, and assigned the lease to Dye, and Green thereafter paid his rent to Dye. Certain modifications were made in the lease in September, 1924, but without changing the relationship of the parties. In November, 1924, appellants served notice of forfeiture of the lease on the ground that gambling had been carried on in that portion of the premises occupied by respondents Green, in violation of the covenants of the lease, one of which was:

"The lessee shall keep said premises clean and in a sanitary condition to the satisfaction of the board of health of the city of Seattle and its inspectors, and to the satisfaction of the lessor, and said premises shall not be used or permitted to be used for any illegal or immoral purposes, business or transaction nor shall gambling or the use of intoxicants be allowed therein."

.Another paragraph of the lease provided as follows:

"If default shall occur by the lessee in any of the covenants, agreements, stipulations or conditions herein, then it shall be lawful for the lessor to declare said lease forfeited and said term ended, and to re-enter said premises, with or without process of law, using such force as may be necessary to remove all persons or chattels therefrom, and the lessor shall not be liable for damages by reason of such reentry or forfeiture."

Answers were filed denying the allegations of the complaint, and also alleging affirmatively that the appellants knew the character of business Green was engaged in prior to the modification of the lease, and were estopped to declare a forfeiture.

[1]   At the trial, the evidence showed that respondent Green is engaged in the cigar business; that the shaking of dice is carried on at said place; punch-boards are used, and that he acted as stake-holder for persons desiring to wager.   The court's finding upon this point was:

"That none of the defendants have set up or carried on on the said premises any unlawful business whatsoever; that with reference to the placing of bets at said premises, the evidence merely shows that the defendant Green had been a mere stake-holder for people desiring to bet on election results, or ball-games, but that said Green did not charge or receive any commission for acting as such stake-holder; that the only other alleged evidence of gambling on said premises was that of customers shaking dice for cigars, and that defendant Green has permitted punch-boards on said premises."

Appellants attack the first sentence of this finding upon the ground that the facts thereafter found demonstrate clearly that gambling was carried on upon the premises; while respondents insist that such acts should not be considered gambling, since they are not different

from those usually carried on in places of like character. But we think that, no matter what may be the custom or the prevailing opinions as to acts of this character, by almost unanimous authority, such acts are considered gambling. Rem. Comp. Stat. § 2469, provides:

"Every person who shall open, conduct, carry on or operate, whether as owner, manager, dealer, clerk or employee, and whether for hire or not, any gambling game or game of chance, played with cards, dice, or any other device, or any scheme or device whereby any money or property, or any representative of either, may be bet, wagered or hazarded upon any chance, or any uncertain or contingent event, shall be a common gambler, . . ."

Section 2474, provides:

"Every person being in possession or control of any tent, building, float or vessel, or part thereof, who shall knowingly permit the same, or any part thereof, to be used for gambling, swindling, poolselling, or bookmaking, or for betting, wagering, or hazarding money or property, or any representative of either, upon any game, scheme or device, or upon the result of any lot, chance, or uncertain or contingent event whatever, shall be guilty of a gross misdemeanor."

This same question was presented in *Zotalis v. Cannellos*, 138 Minn. 179, 164 N. W. 807, L. R. A. 1918A 1066, an action to dispossess for gambling carried on by a sub-lessee of the premises. It was there contended that the shaking of dice for cigars did not constitute gambling, and if so that it was too trivial to justify the revocation of the lease. There the court said:

"The municipal court seems to have regarded shaking dice for cigars as too trivial to constitute gambling within the meaning of the condition. It has long been settled, however, that playing any game for cigars or drinks, or under an agreement that the loser should treat to cigars or drinks or other refreshments, is gam-

bling. *State v. Wade,* 43 Ark. 77, 51 Am. Rep. 560; *State v. Maurer,* 7 Iowa 406; *McDaniel v. Com.,* 6 Bush 326; *Com v. Gourdier,* 14 Gray, 390; *Lord v. State,* 16 N. H. 325, 41 Am. Dec. 729; *Brown v. State,* 49 N. J. L., 61, 7 Atl. 340; *Hitchings v. People,* 39 N. Y. 454; *Walker v. State,* 2 Swan 287; *Humphreys v. State,* 34 Texas Crim. Rep. 434, 30 S. W. 1066. Gambling with cards, dice, or any other device whatever, is prohibited by statute; and any person who suffers gambling devices to be used for the purpose of gambling in any building owned, occupied or controlled by him, is guilty of a criminal offense. Gen. Stat. 1913, §§ 8732, 8733. The violation of a condition in the lease cannot be said to be trivial when the violation is of such a character that the lessor may be subjected to a criminal prosecution on account thereof."

[2] The next question to be noted is whether a violation by the sub-lessee of the clause of the lease against gambling, has the same effect to work a forfeiture of the lease as a violation by the head lessee. Tiffany in his work on Landlord & Tenant, § 194, p. 1386, states the rule as follows:

"In the case of a sublease, the act of the subtenant, if in violation of a condition of the head lease, has the same effect as the act of the original tenant, in enabling the head landlord to enforce a forfeiture not only against such subtenant, but also against his sublessor, the tenant, or against a subtenant of another part of the premises. For this reason it is a proper precaution, for one holding under a lease which contains a clause of re-entry for the doing of, or for the failure to do, certain classes of acts on the premises, to insert in a sublease made by him, a covenant by the sublessee to perform the covenants and conditions of the original lease, the effect of which will be to make the sublessee liable to indemnify him for a loss of the term in case of a failure in this respect."

The text is supported by numerous authorities, among them being: *People v. Bennett,* 14 Hun (N. Y.)

63; *Clarke v. Cummings,* 5 Barb. (N. Y.) 339; *Wheeler v. Earle,* 5 Cush. (Mass.) 31, 51 Am. Dec. 41; *Miller v. Prescott,* 163 Mass. 12, 47 Am. St. 434; *Ft. Worth Driving Club v. Ft. Worth Fair Ass'n,* 103 Tex. 24, 122 S. W. 254, Ann. Cas. 1912D 67.

In *Wheeler v. Earle, supra,* the court passed upon the question in the following language:

"This restriction upon the manner of using the premises runs with the land, and is binding upon the estate in the hands of subtenants. They take only the title of the lessee, and with the like limitations and restrictions. Such use by a subtenant holding under the original lessee, for an unlawful purpose, would equally forfeit the estate. This principle seems very clear, and hence, in the treatises upon the relation of landlord and tenant, it is said that when an estate is held subject to forfeiture, for breaches of numerous covenants or stipulations, some of which may be likely to be violated, it is expedient always to take from a sublessee good security against all such violations of the various stipulations in the original lease, as may subject the original lessee to lose his whole estate. By creating subtenants, the original lessee puts them in possession of the premises, and being thus under him, their acts, if in violation of the conditions of the lease, will cause a forfeiture."

In *Miller v. Prescott, supra,* the above ruling was reaffirmed, the court saying:

"We are of the opinion that the agreement not to 'make or suffer' an unlawful use of the premises must be interpreted as a stipulation that there shall be no unlawful use by the original lessee, or by any person who is occupying under him. It is easy for the lessee to control the use of the property, and to protect the interests of the lessor and of himself in this particular. With this interpretation effect is given to the word 'suffer.' It may not be reasonable to hold that the covenant makes the lessee liable for an unlawful use of the property by trespassers; but he may well be held to 'suffer' an unlawful use of the property if he does

not take effectual measures to prevent such a use by those who occupy by his authority. The adjudication in *Wheeler v. Earle*, 5 Cush. 31, 51 Am. Dec. 41, fully covers the ruling now in question.''

Respondents rely upon the decision in *Wilson v. Twamley*, (1904), 2 K. B. 99. That was an action by a landlord to recover damages for breach of a covenant by reason of which the license to conduct a public house, or beer house, upon the premises, was forfeited. In holding that the lessee was not responsible for the acts of the sublessee, the court used some language tending to support the position of respondent. The decision is made to rest to a very great extent upon the words used in the covenant, and seems opposed in principle to the later case of *Mumford v. Walker*, 71 L. J. (K. B.) 19. In the latter case, the court allowed damages against the lessee for the act of the sublessee in causing a breach of the covenant. It follows, therefore, that the act of the sublessee in using the premises for an unlawful purpose works a forfeiture of the head lease the same as an act of the head lessee himself.

[3] One other question remains. Appellants brought this action under the unlawful detainer statute, Rem. Comp. Stat., § 812, as follows:

''A tenant of real property for a term less than life is guilty of unlawful detainer either,— . . .

'' (4) When he continues in possession in person or by subtenant after a neglect or failure to keep or perform any other condition or covenant of the lease or agreement under which the property is held, including any covenant not to assign or sublet, than one for the payment of rent, and after notice in writing requiring . . . in the alternative the performance of such condition or covenant or the surrender of the property, served (in the manner provided in this act) upon him, and if there be a subtenant in actual possession of the

premises, also upon such subtenant, shall remain un-complied with for ten days after service thereof. Within ten days after the service of such notice the tenant, or any subtenant in actual occupation of the premises, or any mortgagee of the term, or other person interested in its continuance, may perform such condition or covenant and thereby save the lease from such forfeiture; or

"(5) When he commits or permits waste upon the demised premises, or when he sets up or carries on therein or thereon any unlawful business, or when he erects, suffers, permits or maintains on or about said premises any nuisance, and remains in possession after service (in manner in this act provided) of three days' notice to quit upon him."

Respondents contend that appellants do not come under the provisions of subdivision 5, permitting summary dispossession upon three days' notice; but are relegated to the ten-day alternative notice in subdivision 4. It is said that the first four subdivisions of the unlawful detainer statute refer to cases where the tenant holds possession *in person or by subtenants* after notice, etc., and that subdivision 5, having no reference to the holding of possession *by a subtenant*, clearly shows a legislative intention not to permit summary dispossession and forfeiture of the lease for any act of a subtenant. An investigation of the first four subdivisions will show that none of them have reference to any of the acts referred to in subdivision 5. Subdivision 1 has reference to a holding over after the expiration of the term for which the property is let; subdivision 2 has to do with monthly or other periodic rent reserved, and possession retained after the twenty-day notices to quit; subdivision 3 provides for those cases where there has been a default in the payment of rent, and possession retained after notice in the alternative to pay or quit. We do not think that subdivision 4 has

reference to acts of waste or the use of the premises for an unlawful purpose, or for the maintenance of a nuisance thereon, which acts are covered by subdivision 5.

It will at once be apparent that subdivision 5 refers to the doing of a certain thing which, in itself, jeopardizes the ownership or value of the property. To commit waste upon premises is to seriously impair its value; to maintain a nuisance thereon may subject the owner to legal action, and to use the premises for an unlawful business subjects the owner to the penalties of the law. It is argued that such a construction is a harsh one, and places the lessee at the mercy of his sublessee; but, as we have seen in the cases cited above, the lessee may protect himself by requiring a bond or other security from his sublessee. There can be no question but what, if the lessee uses, or permits the premises to be used, for an unlawful business, the landlord's action could be predicated under subdivision 5. If, under the cases we have referred to, the act of the sublessee works a forfeiture the same as an act of the lessee, it then follows that the landlord's right to forfeit is properly exercised by giving notice under subdivision 5, § 812.

[4] It is finally contended by respondent that, in any event, there had been a waiver of the provisions of the lease, and that appellants are estopped to forfeit, since the use of the premises in question for an unlawful purpose was known. The evidence shows that the unlawful use has continued down to the time of trial. This is not a case where the landlord has received rent with knowledge of the illegal use of the premises, and then seeks to forfeit for acts committed prior to receipt of the rent.

This contention is well answered in *Zotalis v. Cannellos, supra,* as follows:

"By accepting the rent, plaintiff doubtless waived prior breaches of this condition, but this is a continuing condition and such acceptance did not waive subsequent breaches thereof. *Gluck v. Elkan,* 36 Minn. 80; *Douglas v. Herms,* 53 Minn. 204, 54 N. W. 1112; 16 R. C. L., 1136, § 657."

[5] Some contention is made that Green was in reality the tenant of Shepard, instead of subtenant of Dye, because the lease was made direct with Shepard. But the record shows that this arrangement was for Dye's benefit, and that he, acting as head lessee, collected the rent from Green. We are satisfied from the record that Green was a subtenant of Dye.

The judgment of the superior court is reversed with instructions to declare a forfeiture of the lease, and for other relief in conformity with the prayer of the complaint.

TOLMAN, C. J., HOLCOMB, FULLERTON, and MITCHELL, JJ., concur.