MERCEDES COSTA PUIG, Plaintiff and Appellant, v. WALDROP PHOTOGRAPHIC Co., Defendant and Appellee.

No. 7493. Argued June 1, 1938.—Decided January 19, 1939.

*F. Fernández Cuyar* and *H. González Blanes,* for appellant. *James R. Beverley, R. Castro Fernández* and *José López Baralt,* for appellee.

MR. JUSTICE WOLF delivered the opinion of the Court.

On March 20, 1928, Mercedes Costa Puig as lessor, and the Waldrop Photographic Co. as lessee, signed a deed of lease for a term of five years. The demised premises were located in the City of San Juan and the lessee agreed to pay a monthly rental of $250. Most important of the clauses or covenants in the instrument were the following:

"*Seventh:* The lessee shall not bring into the house inflammable or explosive materials.

" *   *   *   *   *   *   *

"*Tenth:* Any matter not stipulated in the present contract shall be governed by the provisions of the Civil Code of Puerto Rico referring to leases."

Subsequently the upper part of the premises and the entrance thereof (*zaguán*) were subleased by the lessee to a third person with the same express restrictions regarding the introduction of explosives or inflammable materials into the building. While both leases were in force and as a result of an explosion, a fire broke out in the subleased portion which caused considerable damage to the entire premises. As a result thereof the original lessee was forced to move to another location in order to continue the operation of its business.

The lessor filed suit against Waldrop & Co. for damages arising out of a breach of contract. Defendant answered set-

ting up a general denial, and counterclaimed in damages, alleged to be a result of the failure of the plaintiff to repair immediately and the consequent loss of business because of a less advantageous commercial site.

On a stipulation of the parties as to the facts upon which the controversy should be decided, the court dismissed both complaints and awarded costs reciprocally but without attorney's fees.

The only error assigned reads as follows:

"The District Court of San Juan committed an error of law and of fact in dismissing the complaint relying on the fact that the defendant was not to be charged with the fire, was not negligent and acted diligently like a wise administrator, merely because it had stipulated that the sublessee should not bring into the house inflammable or explosive materials; and the error consisted in that the defendant as a lessee and sublessor was not relieved by the sublease contract from responibility for the performance of the original lease to the lessor; and, besides, because it failed to produce any evidence to overcome the presumption of guilt established by sections 1137, 1451, 1453 and 1454 of the Civil Code, 1930 ed."

The facts agreed upon state that on May 16, 1932, "while both the aforesaid contracts were in force an explosion occurred followed immediately by a fire which damaged the leased property, which fire turned out to be the result of the storage of several packages of torpedoes without fuse which Mr. Lladó, the sublessee, had stored in the first floor of the house described in the complaint and subleased to him."

The plaintiff originally based her complaint upon a violation of the seventh clause of the lease. On appeal, however, the scope of the cause of action has been broadened so as to encompass another possible ground of recovery, to wit: an action based principally on section 1453 of the Civil Code, 1930 ed., which reads:

"The lessee is liable for the deterioration or loss suffered by the thing leased, unless he proves that it took place without his fault."

Appellant's first contention is that defendant failed to overcome the presumption, established by the Civil Code, supra, to the effect that a lessee is responsible for any loss or damage to the leased premises. In support of his argument the cases of *Ramírez* v. *Muñoz,* 33 P.R.R. 350; *Del Valle* v. *González & Co.,* 39 P.R.R. 739 and *Ruiz Sevilla* v. *Umpierre,* 49 P.R.R. —— are cited. The proposition set forth in the jurisprudence mentioned is merely a ratification of the principles established by law. The trial court in the present case decided that the stipulated facts were sufficient to absolve the defendant of any fault in the fire.

It can be safely concluded that defendant had no active part in the storing of the explosives. The mere fact that their introduction took place in the subleased part of the building would tend to support such a conclusion. After an analysis of the circumstances, we are inclined to uphold the decision of the lower court. The reasoning would necessarily start out from the fact that the Waldrop Photographic Co. had bound itself not to introduce inflammable materials into the building. There is no evidence that its business was such as to make such introduction probable, nor that there was reason to believe that the defendant had ever at any time directly violated such a clause. Consistent with the agreed restriction and with a consciousness of its sense of responsibility thereunder, the defendant inserted such a limitation in the deed of sublease. Thereafter the fire took place and there was an express denial of any knowledge or responsibility with regard to its source or effects. This may be seen from the notarial demand for repairs (*Acta de Requerimiento*) which appears in the record. It is extremely difficult to prove a negative state of facts and much more so when such proof is required as to a state of mind. By this we mean that defendant could do little more, if anything at all, than deny knowledge. In this respect we find nothing inconsistent in the stipulation of facts. Quite the contrary, from a reading of the third paragraph of such a document,

most of which has already been quoted, it appears that the fire turned out (*resultó ser*) to be the consequence of the existence of some inflammable torpedoes (*petardos*) which the sublessee had stored on the premises. Such a statement carries with it the idea of an investigation and subsequent discovery at a time following the fire. In view of all the foregoing it is not possible for us to disagree with the lower court on the matter of knowledge.

In regard to this matter of the blame or fault of the defendant, we have so far dealt only with the possibility of the lessee's physical or direct relationship to the storing of the explosive articles. The question of a derived responsibility on the ground that the act of the sublessee should be considered the act of the lessee is the next point on which the appellant relies. The greatest emphasis is put upon section 1440 of the Civil Code, which provides:

"Should it not be expressly forbidden in the contract of lease of things, the lessee may sublet the whole or a part of the things leased without prejudice to his liability for the fulfilment of the contract executed with the lessor."

Citations from Martínez Ruiz (*Código Civil Interpretado por el Tribunal Supremo*, Vol. 9, p. 539–540) and Laurent (*Principio de Derecho Civil*, Vol. 25, p. 229–230) are also discussed. The difficulty in this case really arises from the fact that the person ultimately responsible, the sublessee, is apparently insolvent or at least financially unable to pay the damages.

In this particular instance it may be a hardship for the plaintiff to attempt to collect from the sublessee, but this seems to be the only possible conclusion. In order to bring the problem more clearly in view let us recopy the pertinent clause of the original lease:

"*Seventh.*—The lessee shall not bring into the house inflammable or explosive materials."

Literally interpreted, such a covenant only restricts the lessee in the physical introduction of explosives. It would

also make the lessee responsible for any violation thereof committed by those for whose actions he is directly bound to answer, such as servants, clerks, agents, etc. Does a sublessee stand in such a relation to the lessee as to make the latter responsible to the original lessor for the acts of the former?

Appellant concentrates his attention upon the proposition that the original contract is not altered or affected by the sublease. We have no quarrel with such an idea. What we cannot accept is her conclusion that the lessee is responsible for the sublessee's breach of both leases. We insist that there has been no breach of. contract by the original lessee.

The jurisprudence of this court on the question now before us does not meet the requirements of the case. Although it has been difficult to obtain authorities touching upon the point, we have run across some citations from American and English courts which may have some. bearing.

In 36 Corpus Juris 92, the following statements to be found:

"A covenant restricting particular acts upon the premises may be such as to hold the tenant responsible for the acts of third persons. Upon a positive covenant by the lessee not to use or permit the use of the premises in a particular manner, the lessee may be liable for acts of a sublessee. Where there is a covenant not to do or permit to be done a particular thing, a lessee who grants an underlease and authorizes that particular thing to be done commits a breach of the covenant. But where the sublease contains the same restriction as the original lease, which is violated by the sublessee, it is held that the lessee is not liable on his covenant not to do or suffer the acts in question, and it is held that a covenant on the part of the tenant for himself and his assigns does not render him liable for acts of a sublessee."

It may be seen that in the situations discussed above the lease went even further than in ours, inasmuch as the limitation or covenant generally read "not to do or suffer the acts in question." The supporting citation in the notes is

from an unavailable English case, *Wilson* v. *Twamley*, 88
L. T. Rep. N. S. 803 (Aff. (1904) 2 K. B. 99).

Under the annotation to the case of *Shepard* v. *Dye*, 137
Wash. 180, 242 Pac. 381 in 49 A.L.R. 831, we find this statement:

"... As in *Granite Bldg. Corp.* v. *Greene* (1904) 25 R. I. 586,
57 At. 649, where a provision in a lease that the lessee should not
sell liquor on the premises, except in the due course of his business
as a druggist, although construed as a covenant which ran with the
land, and as such binding upon the lessee, was held not to work a
forfeiture of the lease where liquor was sold on the premises by a
subtenant of the lessee in violation of the covenant, since, under the
provisions of the covenant, no words were used requiring the lessee
to see that no liquor was sold on the premises."

The cases of forfeiture of lease by *illegal* acts of subtenants are not applicable.

In the case of *Mudge* v. *West End Brewing Co.*, 68 Misc.
(N. Y.) 362 the court among other things said:

"In *Stevens* v. *Armstrong* 6. N. Y. 435, it is held, that, to render
one person liable for the negligence of another, the relation of master
and servant or of principal and agent must exist between them.
Kuhl was neither the servant nor the agent of the defendant.

"There is no implied obligation upon the tenant to answer for
the good character or conduct of the subtenant. He has no authority to control his conduct outside the terms of the lease, and the
wrongful act of Kuhl was his personal, wrongful act ..."

There is a well-known principle of contract law which
provides that a lease must be construed most strongly against
the lessor, for he might have expressed himself more clearly,
and the general rule is that the terms of a grant are taken
most strongly against the grantor. The lessor was likewise
in a position to protect herself, either by expressly prohibiting subletting or making it subject to her consent, or by
requiring the tenant to be absolutely responsible for such
loss.

The judgment should be affirmed.

Mr. Justice Travieso and Mr. Justice De Jesús took no
part in the decision of this case.