MERCEDES COSTA PUIG, demandante y apelante, v. WALDROP PHOTOGRAPHIC Co., demandada y apelada.

Núm. 7493.—*Sometido:* Junio 1, 1938. *Resuelto:* Enero 19, 1939.

*F. Fernández Cuyar* y *H. González Blanes,* abogados de la apelante, *James R. Beverley, R. Castro Fernández* y *José López Baralt,* abogados de la apelada.

EL JUEZ ASOCIADO SEÑOR WOLF emitió la opinión del tribunal.

El 20 de marzo de 1928 Mercedes Costa Puig, como arrendadora, y la Waldrop Photographic Co., como arrendataria, otorgaron por escritura pública un contrato de arrendamiento por el término de cinco años. El local arrendado radicaba en la ciudad de San Juan y la compañía arrendataria se obligó a pagar una renta mensual de $250  Las cláusulas más importantes de dicho convenio fueron las siguientes:

"*Séptima:* El arrendatario no podrá introducir en la casa materias inflamables ni explosivas.

" .    .    .    .    .    .    .    .    .    .

"*Décima:* Para todo lo no estipulado en este contrato regirán las disposiciones del Código Civil de Puerto Rico sobre la materia de arrendamiento."

Posteriormente la arrendataria subarrendó el zaguán y primer piso de la referida propiedad a una tercera persona bajo las mismas condiciones en cuanto a la introducción en la casa de materias inflamables o explosivas. Estando ambos arrendamientos en vigor, y como consecuencia directa de una

explosión, ocurrió un incendio en la parte subarrendada que causó daños de consideración a todo el edificio. Como resultado de dicho fuego la arrendataria original se vió obligada a mudarse a otro local a fin de poder continuar la explotación de su negocio.

La arrendadora demandó a Waldrop Photographic Co. en daños y perjuicios por incumplimiento de contrato. La demandada negó generalmente los hechos en su contestación y en una contrademanda alegó daños provenientes de la omisión por parte de la demandante de reparar el local inmediatamente y además alegó pérdidas en su negocio debido a haber tenido que establecerse en un punto menos ventajoso.

Por estipulación de las partes en cuanto a los hechos en controversia, la corte desestimó ambas demandas y condenó a las partes recíprocamente al pago de costas, pero sin honorarios de abogado.

El único error señalado lee como sigue:

"La Corte de Distrito de San Juan cometió error de derecho y de hecho al desestimar la demanda fundándose en el hecho de que la demandada no tuvo culpa en el siniestro, ni fué negligente y actuó diligentemente como un buen padre de familia, simplemente por haber prohibido al subarrendatario introducir en la casa materias inflamables y explosivas; y erró en ello porque la demandada como arrendataria y subarrendadora, no quedó relevada mediante el contrato de subarriendo de su responsabilidad al cumplimiento del contrato original para con la arrendadora, y además porque no adujo evidencia alguna para destruir la presunción de culpabilidad establecida en los artículos 1137, 1453, 1451 y 1454 del Código Civil, edición 1930."

En los hechos estipulados se dice que allá para mayo 16 de 1932, "estando vigentes ambos contratos anteriormente mencionados, ocurrió una explosión seguida por un incendio que causó daños a la propiedad arrendada, resultando haber sido consecuencia de la existencia de varios paquetes de petardos sin mechas que el subarrendatario, Sr. Lladó, había almacenado en el primer piso que le fué subarrendado de la finca descrita en la demanda."

La demandante originalmente basó su reclamación en la violación de la séptima cláusula del contrato. Sin embargo, en apelación el alcance de su causa de acción ha sido ampliado de manera que incluya otro posible fundamento de derecho, a saber, una acción basada principalmente en la sección 1453 del Código Civil, edición 1930, que dispone:

"El arrendatario es responsable del deterioro o pérdida que tuviere la cosa arrendada, a no ser que pruebe haberse ocasionado sin culpa suya."

El primer punto levantado por la apelante es que la demandada dejó de controvertir la presunción establecida por el Código Civil, supra, al efecto de que un arrendatario es responsable de cualquier daño o pérdida que sufra la cosa arrendada. Para sostener su argumento cita los casos de *Ramírez* v. *Muñoz,* 33 D.P.R. 362; *Del Valle* v. *González & Co.,* 39 D.P.R. 820 y *Ruiz Sevilla* v. *Umpierre,* 49 D.P.R. 270. El principio enunciado en la jurisprudencia citada es meramente una ratificación de postulados de derecho. La corte inferior en el presente caso resolvió que los hechos estipulados eran suficientes para absolver a la demandada de toda culpa en el incendio.

Puede asumirse con bastante seguridad que la demandada no tomó parte activa en la introducción de los explosivos. El mero hecho de que su introducción ocurriese en la parte subarrendada del edificio tendería a sostener dicha conclusión. Después de un análisis de las circunstancias, estamos inclinados a sostener la decisión de la corte de distrito. El razonamiento necesariamente partiría del hecho de que la Waldrop Photographic Co. se había obligado a sí misma a no introducir materias inflamables dentro del edificio. No hay evidencia alguna de que su negocio fuese de tal naturaleza que levantase la probabilidad de dicha introducción, ni de que hubiese razón alguna para creer que dicha demandada hubiese en alguna ocasión violado directamente dicha cláusula. Consistente con la restricción convenida y cons-

ciente de su sentido de responsabilidad bajo dicha restricción, la demandada introdujo la misma prohibición en el contrato de subarrendamiento. Posteriormente surgió el fuego y hubo una negación expresa de conocimiento o responsabilidad en cuanto a su origen o efectos. Esto puede verse del acta de requerimiento solicitando reparaciones que aparece de los autos. Es sumamente difícil probar un estado de hechos negativo y mucho más cuando dicha prueba es requerida en cuanto a un estado mental. Por esto queremos decir que la demandada no podía hacer mucho más, en caso de poder hacer algo, que negar conocimiento de los hechos. En lo que a esto se refiere, no encontramos nada en conflicto en la estipulación de hechos. Al contrario, de la lectura del tercer párrafo de dicho documento, la mayor parte del cual ha sido ya copiada, se desprende que el fuego resultó ser la consecuencia de la existencia de unos petardos que el subarrendatario había introducido en el local. Dicha declaración lleva consigo la idea de una investigación posterior al fuego, de la cual surgió el descubrimiento de su origen. En vista de todo lo que antecede, nos es imposible diferir del criterio de la corte inferior en cuanto a la cuestión de conocimiento.

Con referencia a este punto de culpa por parte de la demandada hemos hasta ahora tratado solamente de la posibilidad de la relación directa o material por parte de la arrendataria en el almacenaje de las materias explosivas. La cuestión de una responsabilidad derivada a base del hecho de que el acto del subarrendatario debiera considerarse como el acto de la arrendataria es otro punto en que descansa la apelante. Se le da el mayor énfasis a lo que dispone la sección 1440 del Código Civil, que lee como sigue:

"Cuando en el contrato de arrendamiento de cosas no se prohiba expresamente, podrá el arrendatario subarrendar en todo o en parte la cosa arrendada, sin perjuicio de su responsabilidad al cumplimiento del contrato para con el arrendador."

También se discuten por la apelante varias citas de Martínez Ruiz (Código Civil interpretado por el Tribunal Su-

premo, Vol. 9, págs. 539–540) y de Laurent (principio de Derecho Civil, Vol. 25, págs. 229–230). La dificultad en este caso surge en realidad del hecho de que la persona finalmente responsable, o sea el subarrendatario, es aparentemente un insolvente, o por lo menos, no está económicamente en condiciones de pagar dichos daños.

Puede que en el presente caso se le haga difícil a la demandante tratar de cobrar sus daños del subarrendatario, mas ésta parece ser la única posibilidad. Con el propósito de traer el problema más a la vista, vamos a copiar de nuevo la cláusula pertinente del arrendamiento original.

"*Séptima:* El arrendatario no podrá introducir en la casa materias inflamables ni explosivas."

Si se interpreta literalmente, dicha condición sólo restringe a la arrendataria en la introducción física de explosivos. También haría a dicha arrendataria responsable de cualquier violación de dicha cláusula por medio de aquellas personas por cuyas actuaciones estuviese obligada a responder, tales como sirvientes, empleados o agentes, etc. Pero, ¿queda un subarrendatario en tal relación hacia el arrendatario que este último sea responsable al dueño original por los actos de dicho subarrendatario?

La apelante concentra su atención en la proposición de que el contrato original no queda alterado ni afectado por el subarrendamiento. No discutimos dicha idea. Lo que no podemos aceptar es su conclusión al efecto de que la arrendataria es responsable del incumplimiento por parte del subarrendatario de ambos arrendamientos. Insistimos en que no ha habido violación del contrato por la arrendataria original.

La jurisprudencia de esta corte sobre esta materia no cubre los hechos del presente caso. Aunque ha sido difícil obtener autoridades aplicables al punto envuelto, hemos encontrado alguna jurisprudencia de cortes americanas e inglesas que pueden arrojar alguna luz.

En 36 Corpus Juris 92, encontramos lo siguiente:

"Una cláusula que restrinja actos específicos en un local puede ser de tal naturaleza que haga responsable al arrendatario por los actos de terceras personas. Bajo una cláusula expresa por parte del arrendatario de no usar o permitir que se use el local arrendado de una manera específica, el arrendatario puede ser responsable de los actos de un subarrendatario. Cuando existe la obligación de no hacer o permitir que se haga determinada cosa, el arrendatario que constituye un subarrendamiento y autoriza el que se haga tal cosa, incurre en una violación de su obligación. Pero cuando el subarrendamiento contiene la misma restricción que el arrendamiento original, la cual es violada por el subarrendatario, se ha resuelto que el arrendatario no es responsable bajo su obligación de no hacer o dejar hacer la cosa envuelta, y se ha resuelto que una cláusula por parte del arrendatario obligándolo a él y a sus cesionarios, no lo hace responsable por los actos de un subarrendatario."

Puede verse que en las situaciones discutidas en el párrafo citado el contrato de arrendamiento iba aún más allá que en el caso nuestro, ya que la limitación o cláusula en controversia generalmente disponía "no hacer o permitir que se hagan los actos en cuestión." La cita que sostiene dichas notas proviene de un caso inglés al cual nos ha sido imposible tener acceso—*Wilson* v. *Twamley,* 88 L. R. Rep. N. S. 803 (Aff. (1904) 2 K. B. 99).

Bajo la anotación del caso de *Shepard* v. *Dye,* 137 Wash. 180, 242 Pac. 381, anotado en 49 A.L.R. 831, encontramos la siguiente afirmación:

". . . Como en el caso de *Granite Bldg. Corp.* v. *Greene* (1904) 25 R. I. 586, 57 At. 649, donde existía una disposición en el contrato de arrendamiento al efecto de que el arrendatario no podía vender licor en el local, excepto en el curso ordinario de su negocio como farmacéutico, aunque se interpretó como una obligación que seguía a la propiedad, y por lo tanto obligatoria para el arrendatario, se sostuvo que no tenía el efecto de rescindir (*work a forfeiture*) dicho arrendamiento cuando el licor se vendió én el local por un subarrendatario del arrendatario, en violación de la cláusula, ya que bajo las disposiciones de dicha cláusula, no existían palabras

requiriendo al arrendatario que se hiciera responsable absolutamente de la venta de licor en el local.''

Los casos de cancelación de un contrato por actos ilegales de subarrendatarios no son aplicables.

En el caso de *Mudge* v. *West End Brewing Co.*, 68 Misc. (N. Y.) 362, la corte dijo, entre otras cosas:

''En el caso de *Stevens* v. *Armstrong*, 6 N. Y. 435, se resuelve que para hacer a una persona responsable por la negligencia de otra, la relación de amo y sirviente o de principal y agente tiene que existir entre ellos. Kuhl no era ni el sirviente ni el agente del demandado.

''No existe obligación implícita por parte de un arrendatario de responder de la buena reputación o conducta de su subarrendatario. No tiene autoridad para controlar su conducta fuera de los términos del contrato de arrendamiento y por lo tanto el acto torticero de Kuhl era suyo propio y personal.''

Existe un bien conocido principio de derecho contractual que declara que un contrato de arrendamiento debe ser interpretado estrictamente en contra del arrendador, ya que él pudo haberse expresado más claramente, y la regla general es que los términos de una cesión (*grant*) deben interpretarse estrictamente en contra del cedente (*grantor*). La arrendadora estaba también en posición de protegerse a sí misma, ya prohibiendo expresamente el subarrendamiento del local, o permitiéndolo sujeto a su consentimiento, o requiriendo que la arrendataria se obligara absolutamente por cualquier daño de esa naturaleza.

*La sentencia apelada debe ser confirmada.*

Los Jueces Asociados Sres. Travieso y De Jesús no intervinieron.