[No. 3,243.]

JOHN F. BRADY AND THOMAS BRADY v. JEF-
FERSON WILCOXSON AND JAMES FARRIS.

CONTRACT FIXING TWO COMPENSATIONS FOR WORK DONE.—Where a con-
tract for keeping and feeding cattle provided two separate compensations
for the labor and expense of the party keeping and feeding them, and there
was nothing in the contract to show that either was to be received in lieu
of the other: *Held*, that the compensations are cumulative and the party
keeping is entitled to both.

IDEM.—When, in such contract, the owners of the cattle reserved the right
to sell the same at any time and upon their own terms, and if sold away from
the place of keeping the parties keeping were to pay two thirds of the
expense of driving and sale, and the net weight of the cattle was agreed
upon at the date of the contract, and the compensations for keeping and
feeding were eight cents per pound on the net increase in the weight at the
time of sale, and two thirds of the increase in the price the cattle should be
sold for over eight cents per pound on the agreed net weight at the date of
the contract: *Held*, that the weight and price of the cattle driven away
and sold were to be estimated at the place of sale, and not at the place of
keeping, and that a provision in said contract that the cattle when sold or
delivered were to be weighed out at the corral of the party keeping, applied
only to such of the cattle as might be there sold.

INTEREST ON UNLIQUIDATED DEMAND.—When a claim is uncertain and
unliquidated, and the amount due cannot be estimated on the face of the
contract, interest on the amount found due by process of law must not be
allowed.

APPEAL from the District Court of the Sixth Judicial Dis-
trict, Sacramento County.

This action was brought on the following contract:

"This agreement, made and entered into this 3d November, A. D. 1866, by and between Jefferson Wilcoxson and James Farris, of the County of Yolo, State of California, parties of the first part, and John F. Brady and Thomas Brady, of the County of Solano, State aforesaid, parties of the second part, witnesseth: That the said parties of the second part do hereby agree and bind themselves to receive and feed three hundred and forty-one head of cattle, weighing two hundred and thirteen thousand and fifty-five (213,055) pounds net (said net weight to be arrived at by deducting one half of the gross weight), from the date of this instrument until the 1st day of March, A. D. 1867; the said parties of the second part binding themselves to furnish good and sufficient corrals, with troughs, supplied daily with an abundance of fresh water for said cattle; and they (the said second party) bind themselves further to feed the aforesaid cattle barley hay, all they will eat, in mangers constructed in the aforesaid corrals; both parties to this agreement stipulating one with the other, that the said parties of the first part shall at all times be in legal possession of said cattle, and that they (the said first parties) shall own and possess the original net weight at this date of the aforesaid cattle, to be valued at the price of eight (8) cents per pound, for the purposes hereinafter named. It is further agreed that if the cattle increase in net weight, the said parties of the first part are to allow the said parties of the second part eight (8) cents per pound for such net increase; but in the event they should decrease in net weight, the said parties of the second part are to allow the said parties of the first part eight (8) cents per pound for such net decrease, to be determined when sales of the cattle are made; the said parties of the first part reserving the right to sell the cattle, or any portion thereof, at any time, first giving the said parties of

the second.part the refusal to buy the cattle offered at the price they (the said first parties) propose to sell. It is further agreed that the said parties of the second part are to have, for feeding and taking care of said cattle, two thirds of the increase in the price the cattle are sold for over and above eight (8) cents per pound on the net weight of said cattle at the date of this agreement. It is further agreed that should there be any cattle remaining unsold on the 1st day of March, A. D. 1867, in case the parties hereto cannot agree on the market price at that time, each party to this agreement shall choose a man (and in case they cannot agree upon the market price, they shall choose a third man); the referees are to examine the cattle and fix the market price of that quality of beef, at the corral, on the net weight as aforesaid. In case one half the cattle should be taken out and sold before the 15th February, 1867, the said parties of the second part agree to feed the remaining half until the 15th March, 1867, if so desired by the parties of the first part. It is also agreed and understood, that at any time the said parties of the first part may want to market said cattle at San Francisco or elsewhere, the expenses of driving and selling shall be divided between the parties hereto as follows, to wit: the said parties of the first part to pay one third, and the said parties of the second part to pay two thirds of the whole amount of the expenses necessarily expended in the sale of said cattle, or any number of them, at any one time. It is agreed that if half, or a less number than half, of the above named cattle should remain until the 15th of March, 1867, then on that day the valuation is to take place, instead of the 1st of March, 1867, as above mentioned. The above mentioned cattle, when sold, or delivered, are to be weighed out at the corral of the parties of the second part, they furnishing correct scales, and men to assist in weighing, when required or called on by the parties of the first part."

The plaintiffs received and kept the cattle at their ranch, in Solano County, and they were sold by the defendants, and the proceeds of the sales were received by them, as follows:

| | | |
|---|---|---|
| Twenty-five head were sold on the 4th of March, 1867, at the plaintiff's ranch, to one Stebbins, net weight ................................... | 15,420 ℔s. | |
| At nine and three fourths cents per pound, amounting to.................. | | $1,503 45 |
| One hundred and two head were sold on the 25th of March, 1867, at plaintiff's ranch, to one O'Connor, net weight............................. | 64,775 ℔s. | |
| At eight and a half cents per pound, amounting to............................ | | $5,505 87 |
| Two hundred and fourteen head were sold, after being slaughtered and dressed as beef, in San Francisco, in March, 1867, for the sum of... | | $12,491 20 |
| The weight of the dressed beef, as sold, being ............................. | 142,024 ℔s. | |
| Total net weight of cattle and beef.. | 222,219 ℔s. | |
| Total amount of money received..... | | $19,590 52 |

The whole expense of driving the two hundred and fourteen head of cattle to San Francisco, of slaughtering and dressing them into beef, of selling the beef, and of feeding them from the time they were taken from plaintiff's ranch until they were slaughtered, was paid by defendants, and amounted to the sum of eight hundred and sixty-one dollars and seventy-two cents.

There was also connected with the sale of the one hundred and two head sold to O'Connor, an expense, which

was paid by defendants, amounting to one hundred and two dollars.

The net weight of the two hundred and fourteen head, when they left plaintiffs' ranch, to be sent to San Francisco, was one hundred and thirty-eight thousand two hundred and sixty-seven pounds, being three thousand seven hundred and fifty-seven pounds less than the weight of the beef of the same cattle when slaughtered and ready for sale at San Francisco.

The total weight of the cattle at the time of the sales, if those sold in San Francisco be counted at the weight of the beef sold in San Francisco, would be an increase upon the net weight of the cattle at the time they were received by plaintiffs, on the 3d day of November, 1866, of nine thousand one hundred and sixty-four pounds.

By counting the net weight of the two hundred and fourteen head of cattle sold in San Francisco at their net weight when they left plaintiffs' ranch, which was one hundred and thirty-eight thousand two hundred and sixty-seven pounds, then the increase of the net weight upon the original weight, when received by plaintiff, would be five thousand four hundred and seven pounds.

The Court below found as a conclusion of law that the weight of the two hundred and fourteen head sold in San Francisco was to be estimated at the plaintiffs' corral, and not in San Francisco where they were sold, thus allowing plaintiffs for five thousand four hundred and seven pounds increase in weight instead of nine thousand one hundred and sixty-four pounds, which would have been the amount if estimated at San Francisco.

The plaintiffs recovered judgment for three hundred and sixty dollars and eight cents, and appealed from the judgment.

*Catlin & McFarland*, for Appellants.

The error we complain of is, not that plaintiffs are charged with two thirds of the expense of marketing the cattle in San Francisco, because the contract so nominates it; but we complain that we are denied the benefits of the sale in that market, and are arbitrarily adjudged to stand upon an imaginary sale, supposed to have taken place at the ranch some time before. The defendants claim that for the purpose of ascertaining how much plaintiffs are entitled to by reason of gain in weight, the sale must be deemed, within the meaning of this contract, to have taken place at the times when said cattle were taken from defendants' ranch to be sent to San Francisco to be sold. If such was the true construction of the contract—if defendants were to enjoy the exclusive benefit of the San Francisco market, it would follow that the plaintiffs would not be chargeable with two thirds of the expense of feeding them from that time until they were slaughtered, and of marketing the beef; and with this condition plaintiffs would be quite willing to accept the construction claimed by defendants.

*P. Dunlap*, for Respondents.

By the Court, NILES, J.:

The contract provided two separate compensations to the plaintiffs for their labor and expense in the care and keeping of the cattle.

First—Eight cents per pound on the net increase in the weight of the cattle at the time of sale over the agreed net weight at the date of the contract.

Second—Two thirds of the increase in the price the cattle should be sold for over and above eight cents per pound on the net weight at the date of the agreement.

These compensations must be considered as cumulative,

as there is nothing in the contract to show that either was to be received in lieu of the other.

We think it is the only reasonable construction of the contract that the weight and price of the cattle sold at San Francisco are to be estimated at the time and place of sale. The defendants reserved the right to sell the cattle at any time and upon their own terms. If they chose to sell at San Francisco or elsewhere, the plaintiffs were to pay two thirds of the whole amount of the expenses of driving and of sale. It is unreasonable to suppose that the plaintiffs would agree to bear this large proportion of the losses without participation in the gains. Considering the whole contract, it is clear to us that the provision that the cattle when sold or delivered were "to be weighed out at the corral of the parties of the second part," applied only to such of the cattle as might be there sold by the defendants, and not to those which might be driven and sold elsewhere.

By this construction the plaintiffs are entitled to the sum of seven hundred and thirty-three dollars and twelve cents for increase in weight of the cattle, and the further sum of one thousand six hundred and seventy-seven dollars and forty cents as their share of the increase in price. From these amounts must be deducted the sum of one thousand two hundred and forty-two dollars and forty-eight cents, for payments and offsets as found by the Court.

The plaintiffs are not entitled to interest. Their claim was an uncertain and unliquidated demand. The amount due cannot be ascertained from the face of the contract, but is to be settled by process of law. On such demands, interest, *eo nomine*, cannot be allowed.

Judgment reversed and cause remanded with instructions to enter judgment for the plaintiffs for the sum of one thousand one hundred and sixty-eight dollars and four cents, in United States gold coin.

Mr. Justice CROCKETT did not express an opinion.