José Ruiz Sevilla, demandante y apelado, *v.* Angel Umpierre, demandado y apelante.

No. 6398.—*Sometido:* Enero 15, 1935. *Resuelto:* Diciembre 23, 1935.

·*Celestino Iriarte* y *F. Fernández Cuyar*, abogados del apelante; *R. Rivera Zayas*, abogado del apelado.

El Juez Asociado Señor Wolf, emitió la opinión del tribunal.

Se trata de un pleito iniciado por un arrendador para recobrar daños y perjuicios de su arrendatario por la destrucción de la casa objeto del contrato por un incendio. Durante la vista la prueba de daños y perjuicios se limitó al valor de la casa al tiempo del siniestro. La controversia principal era si el demandado había destruído la presunción establecida en el Código Civil al efecto de que la pérdida ocurrió por culpa suya.

Los varios artículos en que se fundaba el demandante leen así:

"Artículo 1451.—El arrendatario debe devolver la finca, al concluir el arriendo, tal como la recibió, salvo lo que hubiese perecido o se hubiera menoscabado por el tiempo o por causa inevitable.

"Artículo 1452.—A falta de expresión del estado de la finca al tiempo de arrendarla, la ley presume que el arrendatario la recibió en buen estado, salvo prueba en contrario.

"Artículo 1453.—El arrendatario es responsable del deterioro o pérdida que tuviere la cosa arrendada, a no ser que pruebe haberse ocasionado sin culpa suya."

Los casos de *Ramírez* v. *Muñoz*, 33 D.P.R. 362, y *Del Valle* v. *González*, 39 D.P.R. 820, según admite el apelante, resuelven que el demandante puede fundarse en la presunción de negligencia y que incumbe al demandado demostrar que ejerció el cuidado debido. Creemos que dejó de probar esto.

La casa estaba situada en el barrio de Hato Tejas de Bayamón. El siniestro ocurrió el 16 de noviembre de 1930. El demandante demostró la existencia del arrendamiento, y como testigo declaró que residía cerca de la finca destruída; que en la noche del incendio fué informado del mismo, fué a la

escena del suceso y no encontró a nadie allí. Sucedió que el demandado había entregado la casa a su hijo, quien la ocupaba en parte con su esposa y niños. Según el apelado, esto en sí constituía una violación de los términos del contrato, que prohibía el subarrendamiento de la casa.

Varios testigos declararon que el hijo cuidaba bien la casa. La corte, después de hacer un resumen de toda la prueba, dijo:

"La defensa de que el siniestro ocurrió de manera imprevista e inevitable, y sin que mediara culpa o negligencia por parte del demandado, no la consideramos probada en forma alguna. No hay el más leve asomo de evidencia, entre la aportada por el demandado, que sostenga su contención."

Después de revisar el código y alguna de la jurisprudencia, la corte continúa diciendo:

". . . Y al aprobar dichos comentarios, dice nuestro alto tribunal, que el precepto de ley es justo, pues al arrendatario le es fácil probar la causa del incendio excusable por estar la finca en su posesión, cosa que no podría hacer el arrendador por no hallarse en estas circunstancias; y también, añade, 'porque un gran número de incendios ocurren por descuido o negligencia del arrendatario.' No tenemos duda alguna de que así lo reconoce el propio demandado al no intentar siquiera probar su defensa. La prohibición de subarriendo violada por el arrendatario, el hallazgo de una lata conteniendo materias incendiadas el día antes del siniestro, y el no haberse tomado medida alguna para investigar tal hecho; la escasa diligencia demostrada para sofocar el incendio, si ello era posible; y otras circunstancias que pueden haber escapado a nuestro análisis, nos llevan a la conclusión de que no hay prueba alguna que sostenga las defensas del demandado y le exima de responsabilidad."

El primer señalamiento de error es como sigue:

"Erró manifiestamente la corte inferior en su apreciación de la prueba, especialmente en su dictamen al efecto de que 'no hay el más leve asomo de evidencia' para sostener la contención del demandado, errando asimismo manifiestamente al sostener que 'no hay prueba alguna que exima de responsabilidad al demandado'."

La prueba que el apelante resumió en su alegato como tendente a demostrar que se ejerció debido cuidado puede transcribirse así:

"El primer testigo presentado por el demandado fué el Sr. Nicolás Durán, secretario de la corte de distrito de Bayamón, quien el día en que ocurrió el fuego pasó por frente de la casa con su mujer e hijos, y se detuvo al ver el resplandor y el humo. Él y su suegro fueron los primeros en llegar al sitio, y allí permanecieron hasta que llegó el hijo del demandado con su esposa. El hijo del demandado intentó entrar en la casa, pero al abrir la puerta salió una gran bocanada de humo, a pesar de lo cual, trató de entrar, impidiéndoselo el testigo, quien lo cogió por un brazo y lo sacó afuera.

"El demandante admitió luego que la esposa del Sr. Durán declararía lo mismo que declaró Durán. Fué llamado a declarar entonces José C. Umpierre, hijo del demandado, quien a la fecha del siniestro vivía la casa con su esposa e hijos. Manifestó que la noche en cuestión él y su mujer salieron hacia Bayamón en automóvil, llevando también a sus hijos. Al regresar se detuvieron en una tienda, como de costumbre, y compraron provisiones, e inmediatamente después oyeron los gritos de fuego. Cuando llegó a la casa encontró mucha gente, cogió la llave, abrió la puerta e intentó entrar, pero alguien detrás de él lo aguantó, halándolo con gran fuerza. El testigo hubiera entrado, a pesar de la humareda y el fuego, pero el empujón que le dieron hacia atrás se lo impidió. Siguió declarando luego que esa tarde había estado fuera de la casa por espacio de una hora solamente, que la había dejado completamente cerrada, había tomado las precauciones ordinarias antes de salir, registrando toda la casa y luego cerrándola; que no había nada que pudiese causar daño, y que estas precauciones acostumbraban tomarlas siempre, en las ocasiones en que iban a Bayamón. Declaró además, que para cocinar usaban carbón vegetal, y para planchar, planchas antiguas de las que se calientan con brasas de carbón. No usaba aparatos eléctricos ningunos. No pagaba canon de arrendamiento, y vivía la casa por concesión de su padre, el demandado. Dentro de la casa tenía muchos muebles, especialmente un juego nuevo que había costado quinientos y pico de pesos. También tenía en la casa otros bienes pertenecientes a su negocio de comisiones. El valor de todo lo que perdió en el fuego ascendía a mil y pico de pesos. En la casa había varias ventanas en malas condiciones, las cuales el testigo tuvo que clavar para mayor seguridad. Declaró luego que dos días antes de ocurrir el fuego, había encontrado debajo de la escalera de concreto una lata

que echaba humo y estaba cubierta con un pedazo de saco; que entre el testigo y el *chauffeur* del demandado la cogieron y le echaron agua, sin darle más importancia a este incidente porque no había peligro alguno para la casa.

"Declaró luego José Oquendo, quien también vivía en la casa al tiempo de ocurrir el incendio. El demandante, al comenzar a declarar este testigo admitió que su declaración, en cuanto a cómo se cocinaba, cómo era la casa, cómo la cuidaban y la manera en que la vivían los inquilinos, sería igual a lo declarado por el hijo del demandado. Asimismo el demandante admitió que María Vázquez de Umpierre, esposa del hijo del demandado, declararía igual que su marido con referencia a cómo atendían la casa, con qué cocinaban, cómo vivían allí, el cuidado que usaban, y lo que ocurrió la noche del incendio. Declaró sin embargo, dicha señora al efecto de que, al llegar esa noche a su casa, mientras ésta ardía, su esposo quiso entrar y abrió la puerta, pero el Sr. Durán lo detuvo para impedírselo, advirtiéndole que se iba a quemar. Manifestó la testigo que no habían estado fuera mucho tiempo, y que al salir habían dejado todo cerrado y en buen estado, y que en el fuego perdieron muebles de sala, de habitación (un juego nuevo que le había costado $558) y de comedor; lámparas, máquina de coser, prendas, etc. A la fecha del siniestro, la testigo se hallaba embarazada, y tenía todo preparado para irse a la clínica, habiéndose quemado asimismo todo eso. Ese día era domingo, y los domingos era costumbre no hacer comida, sino tomar cosas ligeras. Ese día antes de salir había recogido todo en la casa, la habían cerrado toda, y la testigo se había cerciorado de que el carbón de la cocina estaba completamente apagado. La iluminación que se usaba en la casa era eléctrica. A repreguntas del abogado del demandante, declaró la testigo que la lata que se había encontrado dos días antes no era una lata con gas, sino una lata de las en que originalmente se vende gas; que su esposo inquirió qué era aquello, y llamaron entonces al demandado y a los peones, los cuales cogieron la lata, la echaron para el frente, le echaron agua, y a nadie se le ocurrió la posibilidad de que una tercera persona intentaba prender fuego a la casa.

"Vino a prestar declaración entonces el Sr. Ignacio Carballeira, Juez Municipal de San Juan, y yerno del demandado. Conocía la casa en cuestión, y declaró que el demandado la utilizaba como vivienda; que el testigo iba con frecuencia a pasar los fines de semana allí, y que el demandado atendía la casa 'en las mismas condiciones, y la tenía en la misma forma, y la cuidaba con el mismo celo, que cuidaba la propiedad de él en la Calle Martí de Bayamón' (Trans.

de Evid., p. 103). Manifestó también que el demandado conservaba la casa en perfecto estado, como un diligente padre de familia.

"Manuel Ramos declaró haber ido a entregar la finca referida al demandante de parte del demandado. El demandado entonces ocupó la silla testifical y declaró que usaba la casa como su residencia, junto con su hijo y la familia de éste; que atendía dicha casa como la suya propia y cocinaban con carbón vegetal; no había aparatos eléctricos ni motores en ella, salvo la iluminación corriente; no tenía aparatos de laboratorio, ni ningún otro que pudiera producir un incendio; usaba planchas antiguas, no eléctricas, y había un motor en la finca, pero separado de la casa, en el aljibe. El incidente de la lata de paslotes de tabaco fué atribuído a cosas de muchachos; no se le dió importancia alguna puesto que no había motivos para sospechar de que alguien quisiera hacerles daño. Declaró no haber podido averiguar la causa del incendio, a pesar de que fué donde la policía (al Jefe López de Azúa). Su hijo perdió todo lo que tenía a causa del incendio, quedándose hasta sin ropas."

Ahora bien, puede considerarse que la corte dijo que no había prueba para destruir la presunción y quizá haya una poca. Empero, nos sentimos obligados a resolver que la presunción de negligencia no fué destruída. El apelante sostiene que él no tiene que probar que ejerció cuidado mediante preponderancia de prueba, mas tiene que hacer algo más de lo que se hizo en este caso.

El demandado no solamente entregó la casa a su hijo sino que por lo menos en otra ocasión la subarrendó a una persona que a su vez permitió a otros que la ocuparan para fines no consistentes con el debido cuidado. Además, no hubo prueba de que después de hallarse la lata de gasolina, aunque el demandado tenía a otras personas empleadas, se hiciera algo para cuidar la casa en forma especial. Todo esto no presenta un caso de la diligencia exigida a un buen padre de familia. La posición de un arrendatario por virtud de la presunción ya dicha es muy similar a la de un demandado, cuando un demandante ha establecido un caso prima facie para sostener las alegaciones de su demanda.

El artículo 100 de la Ley de Evidencia provee:

"Una presunción (a menos que la ley no la hubiere declarado concluyente) puede controvertirse mediante otra evidencia, directa o indirecta; pero a no serlo así, será obligación del juez o jurado pronunciar su veredicto o fallo de acuerdo con la presunción."

Algunos de los otros señalamientos se referían a los daños y perjuicios. La corte concedió $3,850, con intereses a partir de la radicación de la demanda. Hubo alguna prueba tendente a demostrar que la casa tenía mayor valor y alguna para probar que valía menos. No podemos hallar que la corte no estuviera justificada en su conclusión. Tampoco encontramos que estuviera equivocada al estimar como daños el valor reducido de la casa por razón del siniestro.

El segundo señalamiento lee así:

"La corte sentenciadora cometió error al negarse a admitir evidencia en cuanto al valor de la propiedad salvada del incendio, perjudicando materialmente los intereses del demandado."

No hallamos que éste sea un señalamiento suficiente, toda vez que no da idea de las cosas que se salvaron. El apelante no nos convence de que la propiedad salvada pudo afectar materialmente el cálculo hecho por la corte.

Por otra parte, creemos que la corte cometió error al fijar los intereses a partir de la radicación de la demanda, objeto del cuarto señalamiento de error. En forma alguna podría decirse que los daños aquí envueltos pueden ser considerados como líquidos, según indica el artículo 1061 del Código Civil, Edición de 1930. Esta es la conclusión de Manresa en sus Comentarios al artículo 1108 del Código Civil español. El apelante no tuvo otra intervención directa en el deterioro del valor de la casa que aquélla que surgiría de la presunción invocada. La misma conclusión está sostenida por la siguiente jurisprudencia de California: *Brady* v. *Wilcoxson*, 44 Cal. 239; *Hewes* v. *German Fruit Co.*, 106 Cal. 441, 39 Pac. 853; *Ferrea* v. *Chabot*, 121 Cal. 233, 53 Pac. 689, 1092.

Toda vez que el caso tiene que ser revocado en parte y puesto que no estamos del todo convencidos de que el deman-

dado no tenía un caso debatible, la concesión de costas debe también ser revocada.

*Debe revocarse la sentencia apelada en tanto en cuanto concede intereses a partir de la radicación de la demanda y en tanto en cuanto concede las costas, y confirmarse en sus demás particulares, de suerte que conceda una indemnización por la suma de $3,850, con intereses a partir de la fecha en que se dictó la sentencia.*