AMECO, Augusto Menéndez Construction Corporation, demandante y recurrente, *v.* Jaress Corporation, demandada y recurrida.

*Número:* R-68-237     *Resuelto:* 17 de marzo de 1970

*Baragaño, Trias, Saldaña & Francis, Orontes Oliveras Sifre* y *José A. Cestero,* abogados de la recurrente; *Rodolfo R. Aponte,* abogado de la recurrida.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

La demandante recurrente, AMECO, Augusto Menéndez Construction Corporation, alegó en demanda enmendada que interpuso en la Sala de San Juan del Tribunal Superior contra la demandada recurrida Jaress Corporation, que en 22 de junio de 1964 arrendó a ésta por el término de 4 meses y por canon de $4,400, determinado equipo de construcción compuesto de una torre y otros artefactos que describió en la demanda; que en 19 de diciembre de 1964 la demandada

devolvió el equipo arrendado en condiciones inservibles; que una compañía aseguradora había pagado el costo de reparar y poner en condiciones de funcionamiento dicho equipo; que por haber entregado la demandada el equipo arrendado en condiciones inservibles la demandante no pudo utilizar el mismo ni ofrecerlo en arrendamiento a partir de la fecha en que lo recibiera devuelto y durante un período que luego se estipuló fue de 4 meses 10 días; y que como consecuencia de ello tuvo una pérdida de $1,100 mensuales hasta que pudo usar de nuevo el referido equipo.

La Sala sentenciadora desestimó la demanda. Sus segunda, tercera, cuarta y quinta conclusiones de hecho son así:

"2.—En virtud de la sección 9 del contrato de arrendamiento el arrendatario asumió la obligación de indemnizar al arrendador por la pérdida o deterioro de la propiedad arrendada.

3.—Conforme lo convenido la torre fue instalada en los terrenos del Hotel Flamboyan, entonces en construcción. De la torre salían una serie de puentes que daban acceso a los distintos pisos en construcción del edificio. Estos puentes o plataformas fueron construidos sólidamente y de acuerdo con las más altas normas reconocidas en la industria de la construcción. Las plataformas fueron inspeccionadas por el Fondo del Seguro del Estado y por el Departamento del Trabajo. Además eran inspeccionadas periódicamente por los agentes y representantes de la parte demandada. Para la fecha del accidente que causó daños a la torre arrendada, ésta, así como las plataformas estaban en posesión de un subcontratista de la demandada de nombre Demora. En la mañana del accidente el subcontratista notificó al representante de la demandada que uno de los postes en la plataforma número 3 estaba fuera de sitio. Inmediatamente el representante de la demandada, Ingeniero Benjamín Miller, persona de vasta experiencia en el campo de la construcción, se trasladó al sitio y al notar el desperfecto dio órdenes para que todo el personal se alejase de la torre. Segundos después hubo el derrumbe cayendo 10 o 12 plataformas. El día antes del accidente la torre había sido inspeccionada y el poste que el día del accidente se notó fuera de sitio estaba en una posición

correcta. Es probable que este poste se desvió al recibir un golpe fuerte. No se sabe cuando y como recibió el golpe.

4.—Con motivo de la caída de las plataformas la torre sufrió daños, pero el costo de reparación fue pagado por una compañía de seguros.

5.—La torre fue devuelta el día 19 de diciembre de 1964 y no pudo ser reparada hasta los últimos días del mes de abril, ya que hubo que encargar a Estados Unidos las piezas y accesorios necesarios para la reparación. Durante el tiempo que duró la reparación la parte demandada se vio impedida de utilizar la torre en algunos proyectos de construcción que desarrollaba o arrendarla a una tercera persona."

Como cuestión de derecho, resolvió la Sala sentenciadora que la arrendataria no había tenido culpa en el daño del equipo y expresó que la posible causa del accidente fue "un fuerte golpe recibido por uno de los puntales de la torre, golpe recibido en circunstancias que se desconocen", lo cual la hacía concluir que la arrendataria no tuvo culpa en los daños del equipo.

Según la cláusula Tercera del contrato de arrendamiento envuelto en esta transacción, la arrendataria se comprometía a pagar un canon de $1,100 por cada *mes adicional* que retuviera el equipo después de vencido el término pactado de cuatro meses. Conforme a la cláusula Séptima, la arrendataria venía obligada a velar porque el equipo arrendado no fuera objeto de maltrato o trato descuidado en su uso, lo mantendría en buenas condiciones y lo devolvería en tales buenas condiciones. Además, utilizaría personal competente o preparado para manejar dicho equipo. Bajo la cláusula Novena, la arrendataria se obligó a indemnizar a la demandante contra todo daño sufrido por el equipo durante el período del arrendamiento, y tal daño físico se computaría a base de un valor capital de $15,000.

Son supuestos de derecho aplicables a esta cuestión litigiosa, los siguientes artículos del Código Civil: (¹)

___

(¹) La numeración de los artículos corresponde a la edición de 1930.

El Art. 1445, párrafo Segundo, que obliga al arrendatario a usar de la cosa arrendada como un diligente padre de familia, destinándola al uso pactado . . .; el Art. 1446 al efecto de que si tanto el arrendador como el arrendatario no cumplieren con las obligaciones que respectivamente les imponen los Arts. 1444 y 1445, podrán pedir la rescisión del contrato o *pedir daños y perjuicios*; el 1453, que dispone que el arrendatario es responsable del deterioro o pérdida que tuviere la cosa arrendada, *a no ser que pruebe haberse ocasionado sin culpa suya*; y el Art. 1458 en el sentido de que si se pierde la cosa arrendada *o alguno de los contratantes falta al cumplimiento de lo estipulado*, se observará respectivamente lo dispuesto en los Arts. 1136 y 1137; y en los 1054 y 1077.

A ese efecto, el Art. 1137 estatuye que siempre que la cosa se hubiese perdido en poder del deudor, *se presumirá que la pérdida ocurrió por su culpa y no por caso fortuito*, salvo prueba en contrario; y el Art. 1054 dispone que quedan sujetos a indemnización de los daños y perjuicios causados los que en el cumplimiento de sus obligaciones incurrieren en dolo, negligencia o morosidad y los *que de cualquier modo contravinieren al tenor de aquéllas*.

Son también supuestos de derecho aplicables, el Art. 1058, que estatuye que fuera de los casos expresamente mencionados en la ley, y de los en que así lo declare la obligación, nadie responderá de aquellos sucesos que no hubieran podido preverse, o que previstos, fueran inevitables; y más particularmente aplicable a la cuestión aquí litigiosa, está el Art. 1059, el cual dispone que la indemnización de daños y perjuicios comprende, no sólo el valor de la pérdida que haya sufrido *sino también el de la ganancia que haya dejado de obtener el acreedor*.

Según las conclusiones de hecho de la Sala sentenciadora, el equipo se dañó debido al derrumbe de unas plataformas

mientras éstas y el equipo estaban en posesión y eran usados por un subcontratista. (²)

■ En *Cabinero* v. *Cobián Theatres*, 81 D.P.R. 960 (1960), discutimos con bastante amplitud la responsabilidad de un arrendatario sobre la devolución de la cosa arrendada. Conforme dijimos en ese caso, a la luz de las autoridades en él citadas, y conforme a los artículos del Código antes mencionados, la aquí arrendataria quedaría exonerada de culpa, o como se ha dicho, habría inexistencia de culpa en ella al no devolver el equipo según lo pactado, sólo en la situación del caso fortuito, aquello que no se puede prever, o aun previsto, es inevitable que ocurra.—Art. 1058.

Considerando que en la situación de un arrendatario el *caso fortuito* no se presume, por disposición expresa del Art. 1137 en concordancia con el 1458, y que por el contrario, la *culpa* se presume, las conclusiones de hecho de la Sala sentenciadora no sostienen en derecho la inexistencia de culpa en la arrendataria por razón del caso fortuito. El que hubiera la necesaria inspección no es el único factor determinante de la inexistencia de dicha culpa. El hecho de que un golpe en los puntales de la torre, en el curso normal de las operaciones o del funcionamiento sin que hubiese ocurrido un acontecimiento no usual de fuerza mayor, sacara fuera de sitio un poste de las plataformas y causara su derrumbe, pudiera desmentir la solidez o corrección de la instalación de dichas plataformas, o conducir a la conclusión de un funcionamiento negligente. (³)

---

(²) El contrato expresamente prohibía el subarrendamiento del equipo. La Sala sentenciadora concluyó que no hubo una violación del contrato en ese sentido, dada la manera en que hoy se construye. Ello, sin embargo, no afectaría la obligación de la arrendataria, contractual y de ley, de devolver el equipo en las buenas condiciones en que lo recibió.

(³) El Exhibit "C" de la parte demandada que está en el récord, es una página gráfica del periódico "the San Juan Star", correspondiente a la edición del jueves 19 de noviembre de 1964. Contiene cuatro fotografías, dos en la parte superior y dos en la parte inferior y entre ellas, a lo

844

■ A la luz de la norma de derecho que rige el *caso fortuito,* el suceso inevitable aunque en algún caso previsto, no podemos convenir en que los hechos, según fueron determinados por la Sala sentenciadora, constituyen una situación de caso fortuito eximente de culpa en la arrendataria. Véanse: *Ruiz* v. *Umpierre,* 49 D.P.R. 270 (1935), y casos citados; *Cabinero* v. *Cobián Theatres,* supra.

■ Hecha la anterior conclusión, veamos de qué responde ella. Responde no sólo del daño emergente, que no está aquí en litigio porque fue pagado, sino también del lucro cesante. Art. 1059 Código Civil.

En *León Parra* v. *Gerardino,* 58 D.P.R. 489 (1949), un caso de arrendamiento en que la arrendataria devolvió la cosa en estado de deterioro, sostuvimos una reclamación por alquileres dejados de recibir (lucro cesante) durante un período de tiempo razonable para obtener y realizar la reparación necesaria. Y véase: *Muñiz* v. *Aetna Casualty & Surety*

---

ancho de la página, en tipo grande, la palabra "COLLAPSE". La mayor de las gráficas representa un edificio en construcción con doce plantas y las plataformas antes del derrumbe, levantadas desde el suelo hasta el último piso. Al calce de esta fotografía se dice en el idioma inglés en que se publica este Diario:

"WHAT FELL—Arrow at the top of the picture, right, points to the long vertical line of scaffolding that fell yesterday. This picture was taken last week. (STAR photo)"

La segunda fotografía demuestra la parte inferior del edificio en construcción, muchos obreros trabajando, y tiene este calce:

"DIGGING OUT—Workmen clear away fallen scaffolding at Flamboyan Hotel construction site. Eleven tiers of scaffolding fell. (STAR photo by Marvin W. Schwarts)"

Una tercera fotografía demuestra obreros trabajando, con este calce:

"SEARCHING—Laborers pry into rubble in quest of fellow workers buried by the crash. (STAR photo by Marvin W. Schwarts)"

La última gráfica demuestra un obrero y una dama abrazados y dice:

"HAPPY REUNION—In the midst of yesterday's tragedy at the construction site, this woman had a happy reunion with her husband, one of the workers. She had rushed to the site after hearing about the accident and found her husband safe. They are unidentified. (STAR photo by José García)"

*Co.,* 38 D.P.R. 839 (1928) :—"la mejor medida de los daños sea el costo de las reparaciones, y el valor del uso de los bienes mientras las reparaciones se llevan a cabo." (Pág. 850) ; *Fernández* v. *Ortiz,* 33 D.P.R. 6 (1924) ; *Hoffman* v. *Cuadrado,* 14 D.P.R. 590 (1908) ; *Pérez* v. *Sampedro,* 86 D.P.R. 526, 530 (1962).

La recurrida nos pide que sostengamos la conclusión de la Sala al efecto de que conceder daños por lucro cesante en este caso equivaldría a extender el alcance del contrato entre las partes.

■ No, porque si bien las obligaciones pueden nacer del contrato, nacen también de la ley, conforme al Art. 1042. Para que en este caso no se aplicara el Art. 1059, preciso hubiera sido que por pacto expreso, la arrendataria hubiera quedado libre de esta responsabilidad obligante de ley. Nada se pactó en contrario. Además, el Art. 1210 del Código Civil amplía la obligatoriedad del contrato para cubrir no sólo lo expresamente pactado, sino también todas "las consecuencias" que según su naturaleza, sean conformes a la buena fe, al uso y a la ley.

El récord demuestra que la recurrente aceptó la entrega del equipo dañado para permitir que el hotel se usara, sin renunciar a sus derechos contractuales. Se había pactado en su origen que la arrendataria pagaría a razón de $1,100 mensuales por todo el tiempo que retuviera el equipo después de terminado el contrato. Al dictar la sentencia que debió haber dictado la Sala sentenciadora, y en ausencia de otra prueba, conforme a nuestras decisiones anteriores, el monto del lucro cesante puede razonablemente fijarse en $1,100 mensuales según se reclamó en la demanda, para un total de $4,766.66 por los 4 meses 10 días en que el equipo estuvo reparándose.

*Se revocará la sentencia recurrida que declaró sin lugar la demanda y se dictará otra declaróndola procedente con indemnización de $4,766.66 a favor de la demandante, las cos-*

846

*tas, y $800 de honorarios de abogado ante el Tribunal de instancia.*

El Juez Presidente Señor Negrón Fernández, no intervino.